ORIGINAL
SEALED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GRUPO MÉXICO S.A.B. de C.V. | § § § § § | Misc. Civil Action No. 3:14-MC-00073-G-BH <br><br> SEALED |

SAS ASSET RECOVERY LTD.'S SPECIAL APPEARANCE TO FILE EXPEDITED MOTION FOR STAY

File Under Seal

COMES NOW, SAS Asset Recovery Ltd. ("SAS") and hereby files this Special Appearance to File Expedited Motion for Stay (the "Motion") as follows:

## I.

## SPECIAL APPEARANCE

SAS makes this special appearance solely to request a stay — pending SAS's appeal to the District Judge, the Honorable A. Joe Fish (the "District Judge"), contesting the District Court's assertion of personal jurisdiction over it — of the order issued by the Honorable Irma Carrillo Ramirez, United States Magistrate Judge, on January 15, 2015, compelling SAS to produce documents (the "Order"). For the avoidance of doubt, SAS does not concede that the District Court had or has personal jurisdiction over SAS, and SAS does not consent to the jurisdiction of the District Court other than for the limited purpose of this Special Appearance.

## II.

## EXPEDITED RELIEF REQUESTED

Due to the expedited nature of this proceeding, as set forth below, SAS hereby requests that this Court: (1) rule on this motion on an expedited basis, on or before 5:00 p.m. CST on January 29, 2015, when its Order states that SAS must produce documents; and (2) order Grupo Mexico SAB de CV ("Grupo Mexico") to respond to this motion by 5:00 p.m. CST on January 28, 2015.

## III.

## PRELIMINARY STATEMENT

On January 15, 2015, the District Court issued the Order requiring SAS to produce certain documents to Grupo Mexico on or before January 29, 2015, fourteen days after entry of the Order.

Pursuant to Fed. R. Civ. P. 72(a), SAS may file and serve objections to the Order within fourteen days after being served with a copy of the Order. Counsel for SAS received via email a copy of the Order on January 16, 2015.[1] After SAS's objections are filed, Grupo Mexico, in turn, has twenty-one days to respond, and then SAS has fourteen days to file a reply. See LR 72.1 (b), (c). As such, the District Judge, will not have all the briefing necessary to consider SAS's objections until the first week of March, 2015.

If the Order is not stayed pending a decision by the District Judge, the deadline set by the Order for producing the very documents SAS seeks to protect will have already passed — rendering the District Judge's review power illusory insofar as SAS is ordered to produce documents prior to the District Judge's ruling on whether it even has the power to do so. Therefore, SAS respectfully moves this Court to issue a temporary stay of its Order pending the District Judge's review of SAS's objections.

### IV.

### ARGUMENT

The District Court has wide discretion in controlling discovery. *Smith v. Potter*, 400 Fed. Appx. 806, 813 (5th Cir. 2010) (citing *Mayo v. Tri-Bell Indus., Inc.*, 787 F.2d 1007, 1012 (5th Cir. 1986)). In determining whether to issue a stay of a discovery order, courts assess the movant's likelihood of success and weigh the equities as they affect the parties and the public. When considering a motion to stay, courts in the Fifth Circuit are instructed to consider the following: (1) whether the movant has made a showing of likelihood of success on the merits;

---

[1] Although SAS does not concede that it is amenable to service via any method other than the particular method specified in Section IV.A, *infra*, SAS will stipulate — without waiving the basis for its Special Appearance or conceding that the Court had jurisdiction to enter the Order against it — that January 16, 2015, may be used as the date from which the District Court may calculate the deadline for SAS to file an objection pursuant to Fed. R. Civ. P. 72(a).

(2) whether the movant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially harm the other parties; and (4) whether granting the stay would serve the public interest. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *O'Bryan v. McKaskle*, 729 F.2d 991, 993 (5th Cir. 1984). Importantly, the movant need not always show a probability of success on the merits, but the movant must present a substantial case on the merits when a legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay. *O'Bryan*, 729 F.2d at 993. Because SAS can show a substantial case on the merits of a question of jurisdiction (a question of law), and a balancing of the other factors weighs heavily in favor of granting a stay, this Court should enter an order staying the Order until such time as the District Judge rules on SAS's objections.

A. *SAS IS LIKELY TO SUCCEED ON THE MERITS.*

SAS, a Cayman Islands exempted company, objects to the Order because the District Court does not have personal jurisdiction over SAS for one simple reason: Grupo Mexico's mere service of a document subpoena issued by a United States court pursuant to Federal Rule of Civil Procedure 45 does not (and cannot) confer jurisdiction on the District Court sufficient for it to entertain a motion to compel directed against SAS — a foreign third party that is incorporated in the Cayman Islands, and maintains its principal place of business in the Cayman Islands. The question of whether the District Court improperly concluded that it has personal jurisdiction over SAS is a question of law that is subject to *de novo* review. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).

Here, the District Court should have started its analysis with the well-settled proposition that the mere issuance by a United States court of a subpoena and its service upon a foreign third party pursuant to Rule 45 — whether in connection with a typical action pending before the

Federal court or in a miscellaneous action pursuant to 28 U.S.C. § 1782 like the action here — simply does not confer upon the court jurisdiction sufficient to hear a motion to compel and enter an order against that foreign third party. *Gillers v. U.S.*, 182 F.2d 962, 978 (D.C. Cir. 1950) ("Aliens who are inhabitants of a foreign country cannot be compelled to respond to a subpoena.") (quoting *U.S. v. Best*, 76 F. Supp. 138, 139 (D. Mass. 1948)); *FTC v. Compagnie De Saint-Gobian-Pont-a-Mousson*, 636 F.2d 1300, 1315-1317 (D.C. Cir. 1979) (holding American court does not have jurisdiction to enforce *FTC* subpoena requiring the production of documents served upon a foreign citizen in a foreign territory because doing so would violate international law). *See also Omni Capital Int'l v. Rudolph Wolff & Co.*, 484 U.S. 97, 104 (1987) (holding federal court does not have personal jurisdiction over a defendant in a lawsuit unless summons has been properly served upon on the defendant and is effective).

Rather, for a U.S. court to obtain personal jurisdiction over a foreign third party sufficient to consider a motion to compel the foreign third party to comply with a discovery subpoena: (1) the Rule 45 subpoena must have been properly served upon the foreign third party in the foreign country under the foreign country's laws; and (2) the Rule 45 subpoena must have the power under the foreign law to force the foreign third party to take action in response to it. *See FTC*, 636 F.2d at 1313, fn 69 (noting that "direct service of American subpoenas abroad does not always violate international law ..." because "[a] nation may give general consent to service upon its nationals by another nation's government agencies by signing an international convention.").

Starting from this black-letter premise, the Court should have continued its analysis with the equally well-settled proposition that no judgment or order issued by a United States court (or any foreign country, for that matter) has any effect in the Cayman Islands upon a Cayman

Islands entity, as a matter of Cayman Islands law, unless the party that seeks to enforce the judgment or order follows proper Cayman Islands procedures.[2] See DICEY & MORRIS, *The Conflict of Laws* (15th ed. 2012) at Rule 41, p. 664 and Affidavit of James Stuart Eldridge in Opposition to Grupo Mexico SAB de CV's Motion to Compel ("Eldridge Aff.") ¶¶ 4, 12, 16-19, attached as Exhibits I and H, respectively, to the Appendix to the Joint Submission of Grupo Mexico SAB de CV and Highland Capital Management, L.P. Concerning Grupo Mexico's Motion to Compel, filed on December 31, 2014 ("Appendix"). *See also FTC*, 636 F.2d at 1311 & 1313 ("Rather, the FTC's issuance of a subpoena and the district court's enforcement thereof, represent a classic exercise of compulsory process, intended to secure... production of documents by an otherwise unwilling witness through threat of judicial sanctions for non-compliance. ... When compulsory process is served, however, the act of service itself constitutes an exercise of one nation's sovereignty within the territory of another sovereign. Such an exercise constitutes a violation of international law."). Therefore, the subpoena issued by the District Court was not effective to compel SAS to produce documents in the first instance and, as a result, the District Court never obtained personal jurisdiction over SAS sufficient to entertain a motion to compel against it — let alone issue the Order.

Significantly, Cayman Islands law provides multiple procedures for obtaining discovery from Cayman Islands entities for use in foreign court proceedings; Grupo Mexico, however, simply chose to ignore all of those procedures. Eldridge Aff. ¶¶ 13-21, Exhibit H to the Appendix. Significantly, each of these procedures would have involved taking the subpoena from this United States Court to a Cayman Islands court, obtaining an appropriate order from the

---

[2] Notably, Grupo Mexico never challenged this legal proposition or attacked the treatise or Affidavit offered in support of it. Under the record before it, therefore, the Court should have accepted this point of Caymans Islands law and ruled accordingly.

Cayman Islands court, and serving that order from the Cayman Islands court upon SAS. *Id.* If SAS failed to comply with the order of the Cayman Islands court, then Grupo Mexico could revisit the Cayman Islands court and ask it to enforce its own order. Grupo Mexico, of course, did none of this. And that oversight (whether negligent or intentional) does not change the fundamental premise that a United States court does not have personal jurisdiction over a Cayman Islands entity sufficient to require it to do that which only a Cayman Islands court can require. *See id.*

For the foregoing reasons, SAS is highly likely to succeed on the merits of this legal question to be reviewed *de novo* by the District Judge.

B. *SAS WILL BE IRREPARABLY HARMED IF A STAY IS NOT GRANTED.*

Absent a stay, SAS will suffer irreparable harm by being ordered to produce confidential documents which SAS would otherwise not have to produce if SAS succeeds on the merits of its appeal. The documents contain confidential information relating to Infund's litigation strategy in the Mexican Proceeding, which would give Grupo Mexico and Larrea an unfair litigation advantage by learning information that is typically considered highly confidential and possibly privileged. Moreover, if, after SAS is ordered to produce the documents, the District Judge ultimately concludes that the District Court does not have personal jurisdiction over SAS, then the damage will already be done and, more importantly, the District Judge's review power will be nothing but illusory.

For example, in *Country Life Ins. v. St. Paul Surplus Lines Ins.*, No. 03-1224, 2005 WL 3690565, at *9 (C.D. Ill. Jan. 31, 2005), the party from whom discovery was sought filed a motion for a protective order to protect information that was confidential and privileged. *Id.* at 1, 9. The magistrate judge — noting that the movant also had a motion to dismiss pending before

the district judge and that the confidential information would be discoverable "if and only if [the district judge] denie[d] the motion to dismiss" — stayed the discovery until the district judge ruled on the motion to dismiss. *Id.* at 9. Here, like the defendant in *Country Life*, SAS will be irreparably harmed by producing documents it should not have been ordered to produce in the first instance. Therefore, a stay of the Order is necessary to protect against such harm while SAS's challenge is pending before the District Judge.

C. *ISSUANCE OF A STAY WILL NOT SUBSTANTIALLY HARM GRUPO MEXICO.*

A temporary stay pending the District Judge's consideration of SAS's objections to the Order will not substantially harm Grupo Mexico. Here, the briefing on objections must be completed in extremely short order: no later than March 6, 2015. Given that the Mexican Court has already ruled on the issues for which Grupo Mexico seeks the documents, and given that discovery and evidence in the Mexican Proceeding are now closed, (see Declaration of Ricardo Rios Ferrer ("Ferrer Dec."), ¶4, Exhibit D to the Appendix), briefly delaying the production of documents cannot substantially harm Grupo Mexico — especially since Grupo Mexico is not even a party to the Mexican Proceeding. *See id.*, ¶3. Indeed, a final judgment in the Mexican Proceeding will have no effect on Grupo Mexico, such that it can never be harmed by not receiving production of the requested documents. *Id.* And, of course, if the District Judge sustains SAS's objections, then Grupo Mexico was never entitled to receive any documents in the first place, and Grupo Mexico will suffer no harm.

D. *ISSUANCE OF A STAY SERVES THE PUBLIC INTEREST*

SAS, a foreign entity, seeks to protect and preserve its right to be properly brought into a court of the United States. The right to be properly haled into any United States court is a fundamental tenet of our entire judicial system, and the refusal by Grupo Mexico to respect

SAS's rights in this regard is prejudicial to the public interest.  The public interest is best served by vigorously protecting and defending the rights of all persons to insist that litigants simply follow the proper procedures before a court will exercise personal jurisdiction.  As such, a stay pending the District Judge's determination of whether it has personal jurisdiction over SAS serves the public interest.

WHEREFORE, SAS respectfully requests that this Court: (1) rule on this motion on an expedited basis, on or before 5:00 p.m. CST on January 29, 2015; and (2) order Grupo Mexico to respond to this motion before 5:00 p.m. CST on January 28, 2015.

DATED:  January 27, 2015

Respectfully submitted,

LACKEY HERSHMAN, L.L.P.

By: _____
Scott S. Hershman
Texas Bar No. 00793205
ssh@lhlaw.net
Roger L. Mandel
Texas Bar No. 12891750
rlm@lhlaw.net
Katy L. Sheppard
Texas Bar No. 24049983
kls@lhlaw.net

3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 (Telephone)
(214) 560-2203 (Facsimile)

**ATTORNEYS FOR HIGHLAND CAPITAL MANAGEMENT, L.P. and SAS ASSET RECOVERY LTD.**

## CERTIFICATE OF CONFERENCE

The undersigned counsel for SAS conferred via email with counsel for Grupo Mexico on January 22, 2015, and counsel for Grupo Mexico stated that Grupo Mexico opposes the relief sought in this motion.

_____
Roger L. Mandel

## CERTIFICATE OF SERVICE

On this 27th day of January 2015, the foregoing document was manually filed with the Clerk of Court, U.S. District Court, for the Northern District of Texas. Service will be made in accordance with Federal Rule of Civil Procedure 5(b)(2) upon counsel for Grupo Mexico SAB de CV as follows:

| | |
|---|---|
| Steven R. Selsberg<br>sselsberg@sidley.com<br>Sidley Austin LLP<br>Wells Fargo Plaza<br>1000 Louisiana Street<br>Suite 6000<br>Houston, TX 77002<br>Telephone: (713) 495-4506<br>Facsimile: (713) 495-7799 | **Via Email and Certified Mail** |
| Yolanda Cornejo Garcia<br>ygarcia@sidley.com<br>Jacqueline Palma Malafa<br>jmalafa@sidley.com<br>Sidley Austin LLP<br>2001 Ross Avenue, Suite 3600<br>Dallas, Texas 75201<br>Telephone: (214) 981-3300<br>Facsimile: (214) 981-3400 | **Via Email and Certified Mail** |

_____
Roger L. Mandel